[No. 59940-8.   En Banc.   September 16, 1993.]

TOLLYCRAFT YACHTS CORPORATION, *Appellant*, v. CLYDE E. MCCOY, ET AL, *Respondents*.

428

*Roberts, Reinisch, MacKenzie, Healey & Wilson, P.C.*, by *Craig A. Staples*, for appellant.

*R. Wayne Torneby, Jr.* (of *Springer, Norman & Workman*), for respondent McCoy.

*Christine O. Gregoire, Attorney General*, and *John R. Wasberg, Assistant*, for respondent State.

UTTER, J. — This is a case of first impression regarding a 1988 amendment to the Industrial Insurance Act (Act). The amendment, Laws of 1988, ch. 161, § 11 (codified at RCW 51.32.160), imposed an aggregate 150-day limit upon the time which the Department of Labor and Industries (Department) has to consider an application to reopen a workers' compensation claim due to the aggravation of an industrial injury. Construing and applying the amendment, the Board of Industrial Insurance Appeals (Board) determined that Clyde McCoy's reopening application was "deemed granted" since the Department had not acted within the 150-day limit. It therefore ordered the Tollycraft Yachts Corporation (Tollycraft), McCoy's employer and a self-insurer under the Act, to reopen McCoy's claim. On Tollycraft's appeal, the Superior Court for Cowlitz County granted summary judgment in favor of McCoy. We reverse.

I

In 1988, McCoy suffered an injury to his back while employed at Tollycraft, and Tollycraft requested a determina-

tive order from the Department on the compensability of the injury under the Act. The Department determined that the injury was work related and ordered compensation for time lost. McCoy's claim was then closed in early 1989, without an award of permanent partial disability.

Later, after moving to Ohio, McCoy filed an application to reopen his claim. According to his physician, McCoy was suffering from a strain of his lower back and left hip which had manifested itself approximately 4 months after the closing of the workers' compensation claim. The application to reopen was sent to Tollycraft and filed with the Department on December 7, 1989.

On March 6, 1990, 1 day before the expiration of the statutory deadline for processing McCoy's application, the Department issued an order extending the deadline for 60 days. The Department's explanation for the delay was that "[t]he self-insured employer has been requested to schedule an independent medical examination" of McCoy. Clerk's Papers, at 28. The record does not indicate the requested examination ever took place. However, Tollycraft alleges that it requested medical information from McCoy's physician twice during this period, on March 9 and April 13, but did not receive a response. See Clerk's Papers, at 57-58.

On May 3, 4 days before the expiration of the extension period, the Department concluded McCoy had not shown an aggravation of his back injury and issued an order denying his application to reopen. The very next day, however, the Department issued an order placing the May 3 order "in abeyance pending further investigation." Clerk's Papers, at 30.

In July, while the Department's denial of McCoy's application was still in abeyance, an independent panel of physicians conducted a "records review" of McCoy's case.[1] *See In re McCoy*, Bd. of Indus. Ins. Appeals Dec. 91,0701 (1991) (*McCoy* I), at 1. Tollycraft asserts the report concluded McCoy's back problems were not a result of his industrial

---

[1]The panel's report is not a part of the record.

injury. According to the Board's description of the report, however, the panel was "unable to offer an opinion as to whether there was objective evidence of worsening." *McCoy* I, at 1.

On August 20, 1990, the Department issued another order, reinstating its original denial of McCoy's application (the denial which had been placed in abeyance on May 4). McCoy requested reconsideration. While McCoy's request for reconsideration was pending, he was examined by the same medical panel which had conducted the "records review" in July. According to the Board, the panel's report[2] from this examination concluded that McCoy's condition was fixed and stable and that no worsening had taken place. *McCoy* I, at 2. On December 13, the Department issued an order affirming its August 20 denial.

McCoy appealed to the Board, arguing the Department was in error in concluding his condition had not worsened and seeking an order reopening his claim. On March 4, 1991, the Board granted the requested relief, but did so on grounds different from those urged by McCoy. The Board noted that as of May 8, 1990, no final order denying McCoy's application had been in force, since the Department had placed the May 3 order in abeyance. Under the Board's interpretation of the 1988 amendment to the Act, the absence of such a final order on May 8 compelled the conclusion that McCoy's application had been "deemed granted" by force of law. *See McCoy* I, at 2-3. The Board consequently reversed the Department's orders, granted McCoy relief on the record, and remanded to the Department for the reopening of McCoy's compensation claim. Tollycraft appealed this decision to the Superior Court for Cowlitz County.

Before the Superior Court reached a decision, the Department issued an order to Tollycraft, as self-insurer, to reopen McCoy's claim for determination of benefits. *See In re McCoy*, Bd. of Indus. Ins. Appeals Docket 91 3205 (July 11, 1991) (*McCoy* II). Tollycraft appealed. The Board denied the appeal,

---

[2] This report is also not part of the record.

reasoning that the Department's order to reopen the claim was merely a "ministerial" act in compliance with the Board's decision in *McCoy* I and was therefore not appealable.

The Superior Court subsequently granted summary judgment to McCoy. The court agreed with the Board's interpretation of the 1988 amendment and remanded to the Department with instructions that McCoy's claim be reopened. Tollycraft appealed to Division Two of the Court of Appeals and then moved to transfer the case to this court. McCoy did not object, and we accepted the transfer. We now reverse.

## II

■ This case is before the court on an appeal of an order of summary judgment. In reviewing such an order, this court engages in the same inquiry as the trial court. RAP 9.12; *Harris v. Ski Park Farms, Inc.*, 120 Wn.2d 727, 737, 844 P.2d 1006 (1993). Since the facts relevant to this appeal are undisputed and the lower court's decision involved only questions of law, our review is de novo. *See Department of Labor & Indus. v. Fankhauser*, 121 Wn.2d 304, 308, 849 P.2d 1209 (1993); *DuVon v. Rockwell Int'l*, 116 Wn.2d 749, 753, 807 P.2d 876 (1991).

## III

The question in this case is an issue of first impression involving the harmonization of the 1988 amendment, Laws of 1988, ch. 161, § 11, p. 698 (codified at RCW 51.32.160), with the existing provisions of the Industrial Insurance Act, RCW Title 51. In particular, the case concerns the resolution of an apparent conflict between two sets of statutory deadlines and the relationship of those deadlines to the administrative authority of the Department. It therefore requires examination of the multilayered and complex statutory scheme established by the Legislature to govern industrial insurance claims.

The 1988 amendment to the Act set out time limits governing the Department's obligation to process applications to reopen workers' compensation claims. After a final determination is made on a claim for compensation, *i.e.*, the claim is "closed", an injured worker has up to 7 years to assert that his

or her injury has been "aggravated" and that additional medical treatment or compensation is warranted. RCW 51.32.160 provides, in part:

> If aggravation, diminution, or termination of disability takes place, the director may, upon the application of the beneficiary, made within seven years from the date the first closing order becomes final, or at any time upon his or her own motion, readjust the rate of compensation in accordance with the rules in this section provided for the same, or in a proper case terminate the payment[.]

Thus, under RCW 51.32.160, three requirements must be met before the Department adjusts compensation based upon a worker's aggravation application: first, the worker's initial claim must have been "closed"; second, there must be aggravation of the disability since the closing of the initial claim; and third, the adjustment must be sought within 7 years of the initial closing date.

Under the second requirement of the statute, the burden is on the injured worker to produce some objective medical evidence, verified by a physician, that his or her injury has worsened *since* the initial closure of the claim. *Gammon v. Clark Equip. Co.*, 104 Wn.2d 613, 617, 707 P.2d 685 (1985); *Dinnis v. Department of Labor & Indus.*, 67 Wn.2d 654, 656, 409 P.2d 477 (1965).[3] The aggravation, however, need not be the result of the industrial accident itself but may be the worsening of the industrial injury through the incidents of day-to-day life. *See McDougle v. Department of Labor & Indus.*, 64 Wn.2d 640, 393 P.2d 631 (1964) (adjustment allowed for aggravation of back injury caused by lifting feed sacks).

The administrative processing of an application to reopen under RCW 51.32.160 takes place in three stages. In the first, the injured worker files an application with the Depart-

---

[3]The necessity of "objective" findings of a worsened condition has been relaxed in the context of psychological conditions, where objective conditions are almost nonexistent. *See Price v. Department of Labor & Indus.*, 101 Wn.2d 520, 527-29, 682 P.2d 307 (1984); *McClure v. Department of Labor & Indus.*, 61 Wn. App. 185, 187, 810 P.2d 25, *review denied*, 117 Wn.2d 1013 (1991).

ment.[4] In the second, the Department determines whether the application to reopen meets the requirements of the statute. *See* WAC 296-14-420(1). If it does, the worker's claim is reopened, and the process moves to the third stage where an evaluation of the worker's condition is made to determine the extent of the aggravation of the injury and the appropriate adjustment of benefits.

■ In the second stage, the decision of the Department to reopen a claim, is not merely a "paper" act. It is, instead, a substantive decision by the Department that the injured employee has met the criteria of the statute to show aggravation. In other words, the Department has concluded there has been objective worsening of the injured worker's condition. This decision may have significant consequences. For example, when the Department is acting in its capacity as administrator of the state accident fund, it is precluded from challenging its own decisions to reopen claims even if it later becomes convinced that no objective worsening has taken place. *See Picich v. Department of Labor & Indus.*, 59 Wn.2d 467, 468, 368 P.2d 176 (1962); *Collins v. Department of Labor & Indus.*, 50 Wn.2d 194, 195, 310 P.2d 232 (1957).

Under the Act as it stood prior to 1988, there was no deadline associated with processing applications to reopen, and the Department therefore had an essentially unlimited amount of time in which to make its initial determination. *See* former RCW 51.32.160. In 1988, the Legislature added the following language, in relevant part:

> If an order denying an application to reopen filed on or after July 1, 1988, is not issued within ninety days of receipt of such application by the self-insured employer or the department, such application shall be deemed granted. However, for good cause, the department may extend the time for making the final determination on the application for an additional sixty days.

---

[4]If the application includes "sufficient medical verification", then compensation to the worker, in medical payments or time loss compensation, begins 14 days after the receipt of the application. WAC 296-14-400.

Laws of 1988, ch. 161, § 11, p. 698 (codified at RCW 51.32-.160). Thus, if the Department is dilatory in processing an application to reopen a claim, *i.e.*, if it does not issue an order denying the application within an aggregate period of 150 days, the application is "deemed granted". The purpose of this amendment is to protect injured workers from arbitrary and unpredictable bureaucratic delay.[5] It accomplishes this purpose by establishing a statutory remedy, the automatic granting of an application to reopen, whenever the Department fails to act within the prescribed time period.

The other features of the Act at issue are the Department's authority to reconsider its own decisions and the structure of deadlines in which the Department exercises that authority. RCW 51.52.060 states, in part:

> That the department, *either within the time limited for appeal*, or within thirty days after receiving a notice of appeal, *may modify, reverse or change any order, decision, or award, or may hold any such order, decision, or award in abeyance* for a period of ninety days which time period may be extended by the department for good cause stated in writing to all interested parties for an additional ninety days pending further investigation in light of the allegations of the notice of appeal[.]

(Italics ours.) The statute also provides that, in the event the Department holds an order in abeyance pending further investigation, it is obligated to issue a final order within 90 days, plus an additional 90 days on good cause shown. RCW 51.52.060 (fifth proviso).

The Department thus has a broad mantle of authority to reverse or modify its own decisions for a period of up to 180 days (90, plus 90 for good cause). While sweeping in its scope, the Department's reconsideration power is well supported by the policies which motivate the Act. One purpose of the Department's reconsideration authority is to alleviate the harm to workers and employers that may be caused by

---

[5]The enactment containing the amendment does not specify the purpose of the time limits, nor have the parties directed our attention to any illuminative legislative history. Under such circumstances, this court has the ultimate authority to determine the meaning and purpose of the statute. *See State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992).

potential errors in the adjudication of workers' compensation claims. *See Brakus v. Department of Labor & Indus.*, 48 Wn.2d 218, 221, 292 P.2d 865 (1956). Another is to ensure the "proper application and disbursement of the accident fund." *Wiles v. Department of Labor & Indus.*, 34 Wn.2d 714, 720, 209 P.2d 462 (1949) (quoting *Baker v. Department of Labor & Indus.*, 181 Wash. 85, 42 P.2d 13 (1935)).

The dispute in this case is basically a disagreement over the proper harmonization of the "deemed granted" deadline with the Department's reconsideration authority. On December 7, 1989, the Department received McCoy's application to reopen his claim. Under the 1988 amendment to RCW 51.32-.160, it then had until March 7, 1990, to process the application.[6] On March 6, the Department took advantage of the 60-day extension period available in the amendment and issued an order that it needed more information to make a decision. This extension ran to May 7. On May 3, 4 days before the extension deadline, the Department issued an order *denying* McCoy's application. The next day, May 4, the Department utilized its reconsideration authority under RCW 51.52.060 and placed the May 3 order "in abeyance".

Three possible interpretations of the interaction between RCW 51.32.160 and RCW 51.52.060 have been presented. In McCoy's view, the Department's authority to reconsider its decisions does not free it from the constraints of the aggregate 150-day limit imposed by RCW 51.32.160. That is, the Department may employ its RCW 51.52.060 authority to reconsider reopening applications, but only within the aggregate 150-day limit imposed by RCW 51.32.160. For example, if the Department denied an application to reopen 30 days after receiving the application, it could use its RCW 51.52.060 authority to reconsider that decision for up to 120 days. The period for reconsideration would end when the 150-day limit was

---

[6]Under the statute, the 90-day deadline in fact begins to run when *either* the self-insured employer or the Department receives the application to reopen. The record does not indicate, however, when Tollycraft received McCoy's application, and McCoy has effectively accepted December 7 as the appropriate starting date. See Clerk's Papers, at 20.

reached, even though RCW 51.52.060 would otherwise allow an additional 60 days. Under this interpretation, the Department's authority to reconsider expired on May 7, 1990. Since there was no final order as of that date, McCoy argues that his application to reopen should have been "deemed granted".

Tollycraft contends that the time limits of RCW 51.32.160 do not apply to the Department's RCW 51.52.060 powers. Under its interpretation, the two statutes operate independently. The Department has an aggregate 150 days to reach a decision on an application. If it does not do so, the application is "deemed granted". Once a decision to deny an application is made, however, the Department may then employ its authority under RCW 51.52.060 to reconsider the decision for up to 180 days, for good cause, regardless of the time constraints in RCW 51.32.160. In this case, therefore, Tollycraft argues the Department's order of August 20 affirming the denial of McCoy's application was properly entered.

In its jurisprudence applying the 1988 amendment, the Board has developed an interesting alternative to the opposing positions urged by the parties. In the brief period since the passage of the "deemed granted" amendment, the Department has occasionally employed its reconsideration authority in a fashion similar to its actions in this case. The Board has taken a dim view of this behavior and has held, in a string of decisions, that the Department may not use its reconsideration authority in such a manner. *See, e.g., In re Aitchison*, Bd. of Indus. Ins. Appeals Docket 90 4447 (Nov. 7, 1990); *In re Watts*, Bd. of Indus. Ins. Appeals Docket 90 3816 (Sept. 4, 1990); *In re Schroeder*, Bd. of Indus. Ins. Appeals Docket 90 3177 (July 16, 1990). The Board has reasoned that to allow the Department to do so would be to make "a mockery of the time limitations imposed [] by the Legislature." *Aitchison*, at 1. However, the Board has allowed the Department to employ its RCW 51.52.060 authority beyond the RCW 51.32.160 deadline when a party *requests* Department reconsideration. *See, e.g., In re Haugen*, Bd. of Indus. Ins. Appeals Dec. 91,1687 (1991); *In re Shore*, Bd. of Indus. Ins. Appeals Dec. 89,5898 (1990).

██ We reject the Board's interpretation of the 1988 amendment. The Board's interpretation, in and of itself, might be a reasonable framework for processing applications to reopen, but it is contrary to the language of the statute and the decisions of this court. RCW 51.52.060 mandates that the Department's authority to reconsider a decision may be exercised *either* upon a notice of appeal or upon the Department's own initiative. We have repeatedly recognized and upheld the Department's authority to reconsider decisions on its own initiative. *See, e.g., Brakus*, 48 Wn.2d at 221; *Wiles*, 34 Wn.2d at 719-21; *Sumerlin v. Department of Labor & Indus.*, 8 Wn.2d 43, 62-63, 111 P.2d 603 (1941). The Board's distinction between exercises of the Department's reconsideration authority at the request of a party and the exercise of that authority on the Department's own initiative is therefore insupportable.

The choice between the interpretations proffered by McCoy and Tollycraft is more difficult. Both of these interpretations are consistent with the maxim of statutory construction that different sections of a statute be read harmoniously rather than in conflict, *Draper Mach. Works, Inc. v. Department of Natural Resources*, 117 Wn.2d 306, 313, 815 P.2d 770 (1991), since each gives some effect to both RCW 51.32.160 and RCW 51.52.060. Within the context of the Act, however, Tollycraft's position is more convincing. First, the language of the two provisions favors Tollycraft's reading. The 1988 amendment states only that an "order" must be issued as of the aggregate 150-day deadline. RCW 51.52.060 then allows the Department to "modify, reverse or change *any order*." The language of RCW 51.32.160 does not imply that the "order" it requires may not be modified, reversed, or changed under RCW 51.52-.060.

Second, careful examination of the preamendment structure of the Act supports Tollycraft's position. Prior to 1988, the Department had an essentially unlimited period of time in which to rule on an application to reopen, subject only to the general restraints on administrative action. Once the Department made a ruling on an application to reopen, it

could then employ its reconsideration authority to withdraw, modify, or reverse that ruling. Graphically:

| Application to Reopen | | Decision on Application | |
|---|---|---|---|
| x | (Unspecified Period) | x | (Appeal Period) |
| | | | Period Available for Dep't To Reconsider |

Injured workers seeking to reopen their claims were therefore subject to unpredictable periods of time during which the Department would act upon their applications. When this feature of the pre-1988 Act is recognized, the 1988 amendment can be understood as simply a definition and limitation of what was previously a limitless time frame. (In the depiction above, the 1988 amendment defined the "unspecified period".)

This understanding of the pre-1988 structure of RCW 51.32.160 explains why Tollycraft's reading is consistent with the purpose of the 1988 amendment in protecting injured workers from arbitrary bureaucratic delays. By eliminating the arbitrariness and unpredictability associated with the previous system, the amendment provides significant new protections for injured workers with respect to departmental decisions. It therefore also satisfies our usual presumption that amendatory language added to an unambiguous statute is designed to work a change in the law. *See People's Org. for Wash. Energy Resources v. Utilities & Transp. Comm'n*, 101 Wn.2d 425, 431, 679 P.2d 922 (1984).[7]

While McCoy's reading of the amendment mandates an even shorter period of time under which the Department may consider an application to reopen, brevity is itself not necessarily a virtue, nor always favorable to the injured worker.

---

[7] This understanding of the pre-1988 structure of the statute also explains why the Board's conclusion that Tollycraft's reading makes a "mockery" of the 1988 amendment is incorrect. Reading the amendment as imposing an aggregate 150-day limit upon a previously unspecified period of time is not a "mockery", even though the Department's additional authority to reconsider its decisions remains unaffected.

The Department may employ its reconsideration authority to reverse or modify decisions adverse to both self-insured employers and to workers. There is no legal reason to believe the Department would in operation exhibit a bias one way or the other. Indeed, injured workers might ultimately be the most disadvantaged under McCoy's reading of the statute, since the Department would frequently be under pressure to issue a denial of an application to reopen simply to meet the statutory deadline. The applicant would then be required to appeal to the Board and perhaps to the courts in order to enforce his or her rights.

Third and finally, McCoy's interpretation is inferior because it effectively reads the amendment as a partial implicit repeal of the Department's authority under RCW 51.52-.060. McCoy would have this court construe the 1988 amendment not only as constraining the Department's obligations to process applications but *also* as truncating the Department's longstanding authority to reconsider its decisions. The implicit repeal of statutes is strongly disfavored. *Our Lady of Lourdes Hosp. v. Franklin Cy.*, 120 Wn.2d 439, 450, 842 P.2d 956 (1993); *Bellevue Sch. Dist. 405 v. Brazier Constr. Co.*, 103 Wn.2d 111, 123, 691 P.2d 178 (1984). Where, as here, an amendment may be harmonized with the existing provisions and purposes of a statutory scheme, there is no implicit repeal. *Brazier Constr. Co.*, 103 Wn.2d at 123.

For these reasons, we hold that once the Department issues an order denying an application to reopen, the requirements of RCW 51.32.160 are satisfied and only the deadlines contained within RCW 51.52.060 constrain the Department's authority to reconsider its decision to deny the application.[8] In this case, McCoy's application to reopen was not "deemed granted" on May 8, since the Department had issued an order denying the application.

---

[8]The presence of the deadlines contained in RCW 51.52.060 guarantee that the Department will not be permitted to delay a decision on an application to reopen indefinitely. *Cf. Erection Co. v. Department of Labor & Indus.*, 121 Wn.2d 513, 852 P.2d 288 (1993) (failure of Department to act within specified time period may terminate Department's authority to act at all).

Given this holding, it is unnecessary for us to consider two additional contentions raised by Tollycraft. Tollycraft argues that, even if McCoy's application to reopen is "deemed granted", the Department may nonetheless employ its RCW 51.52-.060 authority to reconsider such a "deemed granted" decision. It also argues that it has a right, either under the due process clause of the Fourteenth Amendment or under the Act, to a hearing on a "deemed granted" decision just as it would with respect to an explicit departmental decision to reopen a claim. These issues are moot because McCoy's application was not correctly "deemed granted". We therefore reserve the questions of whether "deemed granted" decisions may be reconsidered under RCW 51.52.060 and the rights of self-insurers to challenge such decisions for appropriate future cases.

The order of summary judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

ANDERSEN, C.J., and BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.